Is it Ms. Onadawan? Onadawan. Say it again. Onadawan. Onadawan. Yes. Thank you. Ms. Onadawan, you have reserved one minute for rebuttal, so that gives you four minutes now. You may proceed. Thank you. May it please the Court, counsel, please forgive my voice. I'm getting over a cold. My name is S.R.A. Onadawan. I represent Thomas Gelardo. This Court should find first that the district court made a mistake based on the entire evidence presented during the bail hearings and the submissions, and this Court should also find that Mr. Gelardo is not a flight risk, nor is he a danger to the community, such that there is no set of conditions to assure his return to court, as well as mitigate the danger to the community. I would submit that there is a set of conditions that will assure Mr. Gelardo's return to court, as well as protect the community. I have three brief issues that I would like to highlight in argument today. The district court was clearly erroneous because it over-emphasized my client's inconsistent employment, lack of explained resources and finances, and the amount of, I would classify, sports accessories or weapons recovered from my client's apartment during the —  Wait a minute. What happened with the weapons that you think he was improperly weighing, or that were being improperly weighed? They were recovered from his apartment at the time of arrest. Right. And the district court, when weighing the fact that the weapons were recovered, in combination with what my client's record, previous record, was, there was an assessment as to dangerousness with respect to my client. So that, in combination with his connection with a crime family, how do we say that that was clear error? Well, the clear error is in the assessment, first, of my client's record that was cited in the government's appellate papers, which is almost 20 years old. I would submit to the court that that is a stale felony record. And in assessing the weapons, it is clear that, in this case, my client was not — has not been associated with possessing any of those weapons in connection with any crime within the last 20 years, as that is the last date of his last felony conviction. In this case — So is your argument basically the information that suggests dangerousness is too old? Is that basically your argument? No, the — Or the associations with a crime family? No, Your Honor. The argument is that the district court's focus on the weapons, or what we're classifying as weapons, and just to be clear to the court, I'm sure the court can recall from the papers, that these are BB guns, these are air rifles, and paintball guns. And I do believe that some rubber bullets were recovered as well. Brass knuckles, knives, machete, ballistic vests. That is correct, Your Honor. The issue is that, in assessing what the recovery of those items are in conjunction with a stale felony record, the court mistakenly found that that is proof of dangerousness. What I'm suggesting to the court is if the mistake was not made, looking at a 20-year-old record, in combination with weapons that were recovered, that he was never charged with the 924C. He's not charged with — Nobody, I think, would dispute that a court could have looked at this information and assessed differently. But, like, why was it clear error to make the determination that it was? Like, I mean, you're making a case for why. Maybe somebody else could have come up with a different conclusion, and the government may or may not have chosen to contest that. But why is it clear error here to look at that in connection with the finances and the gun association and the weapons? Your Honor, well, I would submit that it does not — my argument does not rest solely on the recovery of the weapons. The clear error was also in the court's reference to and reliance on a case that's not analogous that discusses dangerousness upon release. Do you think that there's an error of law? I am arguing both things. What is the error of law you think the district court made? The district court relied on U.S. v. Dono, which is cited in the papers. And in the interest of time, I will — U.S. v. Dono, and basically echoing what the magistrate judge had found, stating that the idea of mirroring actual incarceration in — by detaining someone in the home is disfavored in the court. And the reason that that's clear error is because when you look at the facts in the Dono case — or Dono, I don't know how to say it, I apologize — but when you look at the facts, they're — the case is wholly distinguishable based on the charge conduct alone. In Dono, the defendants were charged with assaulting individuals using a firearm during the assault. The individuals in Dono threatened to kill two people for unpaid money. The government, during the bail litigation, played excerpts of an audio recording of the assault that was captured by the cooperating witness. And there was actually — recording revealed the defendants in that case beating and threatening the victims, promising to carry out further acts of violence against the victims and their families unless the victims provided money to the defendant. Those are the facts of the case that not only Magistrate Judge Merkel relied on, but also District Court Judge Reyes relied on with respect to Dono. That is not wholly — I mean, I guess I'm not sure I understand. I mean, the fact that the magistrate judge referred to a case that involved a similar application of the Bail Reform Act, it was improper? What is — the case is not analogous to the case before — and I'm speaking about Judge Reyes' reliance on it as well — before the court. It is clear error because it does not make sense that in such a case where the facts are wholly different, there could be a reasoning that aligns with the decision. Okay, but are you disputing that we have law that says we're not trying to mirror prison conditions? No. The law exists. I read the case. Okay, so you're — what I think you're arguing is not that there was an error of law decided, but that it was inapplicable because it's too distinguishable from your facts. That is correct. Okay. I wouldn't exactly call that an error of law, though. Like, to me, as they said, Dono said X, and it actually says Y, but in any event. And I — and just — and I would further argue, and this may be a case of, you know, I would suggest inapplicability or — but if, in reliance on the case in Dono, if the reasoning and the thinking of the district court in Dono suggests that the same should be applied to Mr. Gilardo here, then it does not make sense as to why, in this particular case where there are 31 defendants charged, 28 of whom have been released on bond, it does not align with the fact that there are at least seven who have been released on bond with home detention and home incarceration combined. Well, let me ask you this. You have here John Doe No. 5 is the person who your client is alleged to have extorted and threatened. I realize that prison is not 100 percent secure, but there are monitored communications. What combination of conditions in this case would have protected against your client commissioning a close confederate to intimidate John Doe No. 5 into a case of amnesia or leaving town or the like? I mean, at this juncture, I cannot say what would have prevented that, but what I would submit is that in many cases in our district, in the circuit, in order to mitigate what is perceived as dangerousness, we have used GPS location monitors. We have used curfews. There is home detention as an — to physically retaliate against someone. I understand that. They have an animus against somebody. Here, you don't need to go that far. You just need to intimidate a witness into not providing truthful information. Your Honor, thank you, Your Honor. The government has not cited or at least purported or proffered anything to suggest that my client has ever done such a thing in terms of witness tampering or obstruction of justice in that manner. But the indictment charges that he extorted John Doe No. 5. The indictment does charge that, and if we are speaking about the Hobbs Act extortion count, the understanding of the facts is that — or at least the proffered facts would be that my client allegedly slapped someone in connection with that. And if I've misstated the facts, you know, I'm happy to be corrected. But I don't know that the government's — oh, I don't want to speak for government. I don't understand that the government's argument is that, you know, my client could possibly strongly suggest to someone to leave town or strongly suggest to someone to have amnesia. What I'm saying is that the case law relied upon by Judge Reyes, as applied, is not analogous to our particular situation. And furthermore, it doesn't make sense in connection with the decisions that have been made with respect to the other defendants that are — some are currently on home detention and home incarceration, which is misaligned completely with what the Dunno case was holding or finding. All right. You're reserved a minute for rebuttal. We'll now hear from Ms. Chet. May I please the court and counsel? Hello. My name's Arisa Chen. I'm an assistant United States attorney in the Eastern District of New York, and I represented the government in the district court. The district court here did not clearly err when it detained Defendant Gilardo after finding the defendant posed both a risk of flight as well as a dangerousness to the community. I'll give a very brief background of the case and then just address a couple of points counsel raised. In terms of the background, this defendant is an associate of the Bonanno crime family. He participated, as we laid out in our brief quite fully, in the rigged poker scheme that was backed by several Acosta-Nostra crime families. As part of the scheme, the defendant specifically played the role of an enforcer who was supposed to collect gambling debts by committing acts of violence as well as threatening acts of  violence. And he did so on at least two occasions that were before the district court in the record. First there was the November 2022 assault of John Doe 5, which was already discussed, charging count 5. In addition, there was an October 11, 2023 confrontation actually between co-conspirators that occurred at one of the poker games where the defendant brought in essentially a baton and went with the co-defendant, J. Ziliani, to one of the poker games. Ziliani was armed with a firearm, and they were to confront co-conspirators that they did not believe were acting consistently with the conspiracy. The defendant here is charged with 30 other defendants. This defendant is charged with wire fraud conspiracy, operating an illegal gambling business, money laundering conspiracy, and the Hobbs Act extortion conspiracy as charged in count 5. As your honors are aware, and the parties agree, we are subject to the clear error standard here with respect to Judge Reyes's ruling. I'm curious if you could answer just a factual point. We've heard about the other co-defendants who were released. Did they go through bail proceedings before the same magistrate judge, or was this a case of different magistrate judges reaching different results? Your honor, I believe there were three magistrate judges that all ruled on different bail and detention applications, just given the volume of the defendants in this particular case. Judge Reyes then heard two bail or detention appeals himself, this being one of them. But he was the only district judge to hear a bail appeal? That's correct, your honor. I know that the district court's decision is what matters for our purposes, but I am curious about this, whether or not you think a presumption of dangerousness applies. I noticed that you didn't make it on the appeal, the district court didn't rely on it, but the magistrate judge did, and the defendants' counsel seems to take a look at it. What are we supposed to do with that? Your honor, we actually concede at this point, having reviewed the full record, it has not been challenged at the magistrate judge level, the district judge level, or frankly before this court. We do concede that was not correct according to 3142E2. Our understanding, frankly, preparing for this case and this argument, is that one of the requirements was not met with respect to that particular statute. That being said, Judge Reyes clearly did not rely on any presumption, so it should not affect. I was trying to dot everything up. I saw that he didn't rely on it, and I saw that he didn't argue it, just trying to, it disappeared, and I wanted to make sure I knew why. Understood, your honor. I will address a couple of factual points that counsel has raised already. First, that there was no kind of allegation that any of the weapons recovered at the defendant's home the day of his arrest were potentially used in the crimes. First of all, there was a baton or extendable nightstick that was recovered as part of the search warrant that day. There is an allegation that on October 11, 2023, the defendant did use a baton. We have not been able to tie that it was that specific baton or that specific nightstick, but certainly the defendant did use weapons as part of the charged crimes. Further, I think there was a discussion about the defendant's old criminal history. First of all, though it is some years ago, the criminal history here is significant. There are multiple violent felony convictions, most recent of which was in 2008. Nevertheless, the charge scheme began in 2019, which is much more recent, and the defendant's involvement in that, again, has been described and proffered as quite violent. Lastly, I would want to discuss, I see I almost have no time left, or have no time. Just that there is not an error of law here, and I don't believe that has been raised in the briefing. My understanding is simply that counsel's argument was that the court should not have been persuaded by certain Second Circuit precedent or certain Second Circuit cases. That's certainly not an error of law, just simply a discussion that Judge Reyes should have come out differently, which is frankly what the clearer standard does not permit. Thank you. All right, thanks very much. Ms. Anatoa? I got it right that time, right? Perfect. Good. You have a minute for rebuttal. Just very briefly, Your Honor. With respect to bringing to the court's attention the Dono case, it is the inapplicability of the case to... Well, it's just that it's distinguishable, but I mean, is that an error of law? To rely... Well, two things. I don't understand that the district court is obligated to avoid creating an incarceratory situation at home. I don't understand that the district court is obligated to not create conditions that would replicate a prison or a jail in the home. And what appeared in Judge Reyes's decision was that that was a large factor considered. That is not the court's obligation. My understanding is that the court has to make a determination after reviewing the evidence proffered and, in some cases, evidence produced by the defense as to whether or not there is a flight risk and whether or not there is a dangerousness concern to the community such that no set of conditions would be able to mitigate the dangerousness as well as assure Mr. Gelardo's return to court. And I would submit that Judge Reyes, since his decision is the one that brings us before this court, relied on inapplicable law and made a mistake in the assessment of the facts as presented and the proofs proffered and evidence produced by the defendant. All right. Thank you both for your reserved decisions.